# IN THE COURT OF APPEALS OF IOWA

No. 15-1562
Filed December 21, 2016

**KOHL'S DEPARTMENT STORES, INC.,**
    Plaintiff-Appellant,

**vs.**

**BOARD OF REVIEW OF DALLAS COUNTY,**
    Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Dallas County, Richard B. Clogg,

Judge.


        Kohl's Department Stores, Inc. challenges the Dallas County Board of

Review's 2013 assessment of its West Des Moines property.  **AFFIRMED.**



        Bret A. Dublinske of Fredrikson & Byron, P.A., Des Moines, and Judy S.

Engel and Phillip S. Bubb of Fredrikson & Byron, P.A., Minneapolis, Minnesota,

for appellant.

        M. Brett Ryan of Watson & Ryan, P.L.C., Council Bluffs, for appellee.


        Heard by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

Kohl's Department Stores, Inc. challenges the Dallas County Board of Review's 2013 assessment of its West Des Moines property at $8,357,450. The district court affirmed the valuation. On appeal, Kohl's contends the court (1) failed "to exercise its own independent judgment" in reviewing the property tax assessment, (2) should not have found its witnesses incompetent, and (3) should not have found the Board's witnesses more credible.

## I.    *Exercise of Judgment*

At the outset, Kohl's argues the district court "adopted nearly verbatim large portions of the [Board's] post trial brief . . . resulting in a decision that is not supported by the evidence in the record or consistent with Iowa law." But Kohl's concedes "[t]he nearly verbatim adoption of one party's [p]ost [t]rial [b]rief does not dictate that a different or separate standard of review should apply."

Our standard of review is de novo. *See Compiano v. Bd. of Review*, 771 N.W.2d 392, 395 (Iowa 2009). While the court's adoption of a party's brief would normally require us to "scrutinize the record more closely and carefully when performing our appellate review," our de novo standard essentially incorporates this level of scrutiny and no additional scrutiny is required. *See Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 97 (Iowa 2011) (citation omitted).

## II.    *Competency of Kohl's Witnesses*

The burden is on the taxpayer to prove one of the statutory grounds for protest by a preponderance of the evidence. *See* Iowa Code § 441.21(3)(b) (2013); *Compiano*, 771 N.W.2d at 396. If the taxpayer "offers competent evidence by at least two disinterested witnesses that the market value of the

property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or person seeking to uphold such valuation to be assessed." Iowa Code § 441.21(3)(b). "Evidence is competent under the statute when it complies 'with the statutory scheme for property valuation for tax assessment purposes.'" *Compiano*, 771 N.W.2d at 398 (citation omitted).

Kohl's offered the testimony and reports of two valuation witnesses, Dane Anderson and Kyran Cook. Kohl's also called Kohl's employee Scott Schnuckel as a witness. The district court found all three witnesses incompetent. On our de novo review, we disagree with this finding.

**Anderson.** The district court found Anderson made "only 'mental adjustments' to account for differences in size and location between his comparable sales and the subject property" and "did not translate these adjustments into specific dollar amounts so the Court could make the necessary adjustments without further evidence." The court concluded his appraisal failed "to comply with Iowa law."

In fact, Anderson used the comparable sales approach to valuation of the property, as required by our legislature. In other words, he followed the statutory scheme. *See Hy-Vee Food Stores, Inc. v. Carroll Cty. Bd. of Review*, No. 12-1526, 2013 WL 5498137, at *1 (Iowa Ct. App. Oct. 2, 2013) (noting board did "not seriously dispute that the experts followed the statutory scheme for valuing property for tax assessment purposes"); *cf. Compiano*, 771 N.W.2d at 399 ("[T]he opinions on market value expressed by [the complainant's two experts] did not comply with the statutory scheme for valuing property for the purposes of tax

assessment."); *Dowden v. Dickinson Cty. Bd. of Review*, 338 N.W.2d 719, 723 (Iowa Ct. App. 1983) (questioning competency of the complainant's witnesses because they "relied *solely* on the income method in reaching their final valuations on all three properties").

Applying statutory dictates, Anderson valued the property at $6,000,000. In arriving at his valuation, he engaged in a detailed "adjustment discussion and analysis." He specifically considered "selected demographic and traffic count data when evaluating each comparable sale" and made "[u]pward qualitative adjustment[s]" based on this data. Although the Board faulted him for failing to quantify his adjustments, Anderson testified "mark[ing] them qualitatively" was "an accepted methodology, peer tested and reviewed through the Appraisal Institute and in the 14th Edition, which is the authoritative source for methodology."

We conclude Anderson's methodology was consistent with generally accepted appraisal methodology and was not grounds to find his testimony and report incompetent.

**Cook.** Like the other appraisers, Cook used the comparable sales approach and other approaches to value the Kohl's store. The district court took issue with the adjustments he made in connection with his comparable sales analysis. However, the appropriateness of his adjustments goes to the persuasiveness of the ultimate valuation figures rather than witness competency. *See Soifer v. Floyd Cty. Bd. of Review*, 759 N.W.2d 775, 784 (Iowa 2009) ("[I]n determining whether the Soifers offered competent testimony from two disinterested witnesses, we examine whether this evidence was admissible on

the question of value, not whether we find it persuasive."). For example, one of the sales Cook used was concededly between related parties. The district court reasonably found his testimony less credible on this basis. *See Wellmark, Inc. v. Polk Cty. Bd. of Review*, 875 N.W.2d 667, 682 (Iowa 2016) ("The mere fact that sales might be considered comparable, however, did not necessarily mean that valuation based on them was credible."). But wholesale rejection of his opinion was inappropriate because the properties he used for comparison purposes were "sufficiently similar to support admission" of his testimony. *See Soifer*, 759 N.W.2d at 785.

**Schnuckel.** The district court found Kohl's employee Scott Schnuckel's testimony incompetent on the ground that it "was not based upon a comparable sales analysis," but a comparison of "per square foot information" with other Kohl's retail stores, which the court found to be "neither a recognized appraisal practice nor a method of valuation recognized by Iowa law." Kohl's takes issue with this finding, noting that Schnuckel was presented as a fact witness rather than a valuation expert. We agree with Kohl's on this point. Just as the Board called the deputy county assessor to testify to foundational facts concerning the development of the Jordan Creek area, Kohl's called Schnuckel to testify to foundational facts concerning retail sales at various Kohl's stores. *See id.* at 782 ("[T]he property owner is 'required to offer a sufficient factual basis for the [witnesses'] opinions to take them out of the realm of mere speculation and conjecture.'" (citation omitted)). Because Schnuckel was not called as a valuation expert, the statutory "competency" requirement did not apply to his testimony. As for the relevancy of sales-per-square-foot data, one of the Board's

experts conceded the Kohl's appraisers did not appear to have used a methodology predicated on pure sales per square foot.

We conclude Kohl's presented two competent valuation experts to challenge the Dallas County assessor's valuation. Accordingly, the burden shifted to the Board to uphold the assessment.

## III. Credibility of Board's Valuation Experts

The Board presented two valuation experts, appraisers Ranney Ramsey and Mark Nelson.

**Ramsey.** Ramsey valued the Kohl's store at $8,400,000 under a comparable sales approach. Kohl's takes issue with Ramsey's valuation opinion on the ground that he was not "a certified Iowa appraiser," he admitted to "serious double counting under his income approach analysis," and he made unjustified adjustments to his comparable sales.

Kohl's cites no authority for the proposition that the Board's experts must be certified appraisers. Ramsey testified he was an associate appraiser with more than twenty years of experience, had completed "all the coursework" required to become certified, and had "completed and passed the test." All that was required for him to become certified was a review of his experience. On our de novo review, we conclude Ramsey was qualified to provide a valuation of the property.

We turn to Ramsey's analysis under the income approach. Ramsey appeared to admit to duplication of operating cost reimbursement revenues but, on redirect examination, explained precisely how he obtained the per-square-foot rent used in determining gross potential income. In any event, any admissions

he made in connection with his calculations under the income approach did nothing to impugn his analysis under the sales comparison approach.

With respect to that approach, Ramsey compared seven properties and prepared a "quantitative adjustment grid" that included location adjustments ranging from fifteen to twenty-five percent. Ramsey also compared the age and condition of the properties and made adjustments for market conditions. Although Ramsey admitted to using his "professional judgment" to make some of the adjustments, we are not persuaded this concession renders his testimony unreliable. *See Sears, Roebuck & Co. v. Sieren*, 484 N.W.2d 616, 617 (Iowa Ct. App. 1992) ("The heart of most assessment cases is the evidence of experts applying, at best, their professional judgments within a context of variables which can in no definite way be objectively conclusive.").

In the end, Ramsey valued the properties "from $62.48 to $118.27 per square foot" and assigned Kohl's a value of $95 per square foot. Ramsey's report and testimony support the Dallas County assessment.

**Nelson.** Nelson valued the Kohl's store at $8,185,000 under a sales comparison approach. He added the value of land and improvements to arrive at a final valuation figure of $8,250,000. Kohl's contends his valuation was flawed because he "conducted no analysis of effective age," made an error in his calculation of the location adjustment, and "focused only on the demand side of the location adjustment."

Nelson compared ten sales of "large-scale retail properties" and made adjustments based on "location, type of use, age and condition, size of the building and land to building ratio." He testified he made age and condition

adjustments for the comparable properties. While he did not determine whether the effective age of the properties was reduced by replacement of certain building components, he testified "[t]hat would be well outside the norm."

As for his location adjustment, Nelson disagreed with Kohl's attorney that he should have used actual retail sales as a benchmark. He testified, "That is a comparison of the business performance of specific stores that is not ideally or even reasonably relevant to the value of the underlying real estate." Instead, Nelson looked "at the retail sales potential within . . . the demographic studies." This was an entirely appropriate consideration. *See Hy-Vee*, 2013 WL 5498137, at *2 (noting that an expert examined annual sales in certain areas to determine whether the recession affected the value of commercial properties in those areas).

Finally, Kohl's concern that Nelson focused only on the demand side of the equation is unpersuasive. Nelson emphasized, "I'm not valuing the Kohl's business here. I'm valuing the underlying real estate."

After adjustments, Nelson obtained prices for the comparable properties ranging from $69.50 per square foot to $136.30 per square foot, with the average price being $96.28 per square foot. He valued the Kohl's property at $92.50 per square foot. We conclude Nelson's valuation supports the Dallas County assessment. *See Wellmark, Inc.*, 875 N.W.2d at 681 (noting "whether properties were sufficiently similar to be comparable was generally left to the sound discretion of the district court").

We affirm the Board's assessment of $8,357,450.

**AFFIRMED.**